UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 20-cr-0252 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Ramon Diego Pacheco (5), | |
| Defendant. | |

Before the Court is Defendant's motion for a new trial. (Dkt. 323.) For the reasons addressed below, the Court denies the motion.

## BACKGROUND

On November 4, 2020, a grand jury indicted Defendant Ramon Diego Pacheco on one count of conspiracy to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846. In March 2021, a grand jury returned a superseding indictment that charged Pacheco with the same offense. After a three-day trial, a jury convicted Pacheco of conspiracy to distribute 50 grams or more of a mixture or substance containing methamphetamine. At trial, Plaintiff United States of America offered evidence including recorded wiretap calls with the defendant, testimony from investigating case agents, and testimony from Pacheco's co-defendant, Scott Velisek.

Pacheco now moves for a new trial.

## ANALYSIS

Pacheco argues that a new trial is warranted because the United States did not present sufficient evidence to allow the jury to reach a guilty verdict. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court has "broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Vega*, 676 F.3d 708, 722 (8th Cir. 2012) (internal quotation marks omitted). But motions for a new trial based on the sufficiency of the evidence are disfavored, *id.*, and a district court "may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred," *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (internal quotation marks omitted).

### I.  Wiretap Evidence

Pacheco first argues that the recordings of the wiretap calls were vague and cryptic and that the testimony of the United States's agents interpreting those calls was "nothing more than guesswork." Members of drug conspiracies often use vague, coded language to discuss drug transactions. *See, e.g.*, *United States v. Garcia*, 785 F.2d 214, 226 (8th Cir. 1986) (observing that "the language the conspirators used on the telephone was guarded, and often in code"); *accord United States v. Manfredi*, 488 F.2d 588, 599 (2d Cir. 1973) (observing that "in a narcotics conspiracy[,] the use of code words and cover-up jargon and methods of dealing make investigation most difficult").

2

Here, the jury heard testimony interpreting the meaning of the recorded calls from Special Agent Tony Holter, a case agent with extensive experience in drug investigations, including participation in more than 400 undercover drug transactions.  Agent Holter testified that recordings in this case "are almost identical" to the calls he makes during undercover drug transactions.  Agent Holter also testified that he was able to distinguish between calls pertaining to drug transactions and calls pertaining to other matters *because* the drug-related calls were vague and cryptic: "The only thing that is different in the drug dealing ones . . . [is that] they are very cryptic, they are very short in duration, they are very vague, and they use different words to mean different things.  You can see that in the calls.  They are very different."  Based on Agent Holter's extensive experience with undercover operations, Agent Holter's interpretation of the terms used in the recorded calls was not merely "guesswork."

In addition, the United States offered other corroborating evidence that the recorded wiretap calls pertained to drug transactions.  On one of the recorded calls, Velisek told Pacheco that Velisek would "send [Pacheco] a cutie right now."  Pacheco asked Velisek if Pacheco could send his "baby mama," Nicole Chaparro.  Velisek told Pacheco to "send her on down."  Velisek also told Pacheco, "I'm going to leave it with somebody that is reliable."  And the jury heard testimony that law enforcement officers observed Chaparro's vehicle stop in front of her co-defendant Leslie Cloud's residence and saw Cloud enter Chaparro's vehicle for a short amount of time and then leave.  One of the investigating officers testified that this interaction "was very consistent with a narcotics transaction."  The jury also heard testimony that law enforcement followed Chaparro's vehicle, conducted a traffic stop, and

discovered approximately 5 ounces of methamphetamine. The testimony of law enforcement officers as to the meeting between Cloud and Chaparro and the discovery of methamphetamine in Chaparro's vehicle corroborates the United States's contention that the recorded calls between Pacheco and Velisek concerned drug transactions.

## II.  Testimony of Scott Velisek

Pacheco also argues that the testimony of Pacheco's co-defendant Scott Velisek was not credible. Pacheco relies on *United States v. Hilliard*, in which the United States Court of Appeals for the Eighth Circuit affirmed the district court's decision to grant the defendant's motion for a new trial because both of the primary witnesses at trial had "serious credibility problems." 392 F.3d 981, 987–88 (8th Cir. 2004). In *Hilliard*, there is no indication that the government offered any evidence corroborating the witnesses' testimony. In contrast, as addressed above, the record includes evidence that corroborates Velisek's testimony, including recordings of Pacheco's calls with another co-defendant, recordings of Pacheco's calls with Velisek, testimony pertaining to the meeting between Chaparro and Cloud, and the methamphetamine subsequently seized from Chaparro's vehicle.

Moreover, the fact that Velisek was a cooperating witness does not make his testimony inherently incredible. *See, e.g.*, *United States v. Coplen*, 533 F.3d 929, 931 (8th Cir. 2008) ("Although the witnesses who testified to [the defendant's] drug-dealing did so with the hope (although not the promise) of reduced sentences, that did not render the testimony inherently unreliable or require that it be corroborated in order to be sufficient to sustain the conviction."); *United States v. Coleman*, 525 F.3d 665, 666 (8th Cir. 2008)

("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony."). Velisek's testimony was not incredible on its face. And Pacheco's counsel thoroughly cross-examined Velisek, which allowed the jury a meaningful opportunity to weigh Velisek's credibility when reaching its verdict.[1] Based on Velisek's testimony and the corroborating evidence presented by the United States, the Court does not conclude that a miscarriage of justice occurred.

### III. Lack of Direct Evidence of Distribution

Pacheco also argues that the United States presented no direct evidence that Pacheco distributed methamphetamine. Contrary to Pacheco's argument, the jury heard recordings of multiple calls between Pacheco and his co-defendants in which Pacheco referenced selling drugs. The jury heard Pacheco say that a "fourpack" from Crandell was "gone in a day," which Velisek testified meant that Pacheco was selling four ounces of methamphetamine a day. The jury also heard Pacheco say that he could "get rid of a few of them" for Crandell, which Agent Holter testified meant that Pacheco could sell a few ounces of methamphetamine. And the jury heard Pacheco say, "I'm about to pass out those

---

[1] Pacheco also argues that Velisek admitted to lying to the Court during Velisek's plea hearing. Velisek testified on cross-examination that, during his plea hearing, he agreed that everything in the plea agreement was true even though he personally believed some of what was contained in the plea agreement was not true. Velisek later testified on re-direct examination that he did not lie during his plea hearing. As such, the jury was presented with conflicting testimony as to whether Velisek testified truthfully at his plea hearing. It is the jury's role to resolve such credibility disputes. *See Coplen*, 533 F.3d at 931. Because Velisek's testimony was not incredible on its face, any decision by the jury to credit Velisek's testimony did not cause a miscarriage of justice.

last ones I got." Based on the contents of the recorded calls as well as the other evidence presented at trial, the jury heard substantial evidence that Pacheco distributed methamphetamine.

In summary, based on a careful review of the evidence presented at trial, the Court concludes that the evidence does not weigh so heavily against the verdict that a miscarriage of justice may have occurred. The Court denies Pacheco's motion for a new trial.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Ramon Diego Pacheco's motion for a new trial, (Dkt. 323), is **DENIED**.

Dated:  October 3, 2022                                             s/Wilhelmina M. Wright
                                                                    Wilhelmina M. Wright
                                                                    United States District Judge